**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **LEONOR ETHEL C.,** *Plaintiff,* v. **COMMISSIONER OF SOCIAL SECURITY,** *Defendant.* | Civil Action No. 23-cv-03089 OPINION |

**ARLEO, UNITED STATES DISTRICT JUDGE**

**THIS MATTER** comes before the Court on Plaintiff Leonor Ethel C.'s ("Plaintiff") request for review of Administrative Law Judge ("ALJ") Vivian McAneney's decision regarding Plaintiff's application for Supplemental Security Income ("SSI") Benefits, pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g). For the reasons set forth in this Opinion, the Commissioner of Social Security's (the "Commissioner") decision is **VACATED** and **REMANDED** for further proceedings.

I. STANDARD OF REVIEW AND APPLICABLE LAW

  A. Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). The Commissioner's application of law is subject to plenary review, but factual findings must be affirmed if they are supported by substantial evidence. Markle v. Barnhart, 324 F.3d 182, 187 (3d Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting

1

Richardson v. Perales, 402 U.S. 389, 401 (1971)). Stated differently, substantial evidence consists of "more than a mere scintilla of evidence but may be less than a preponderance." McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004).

"[T]he substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). Accordingly, the standard places a significant limit on the district court's scope of review: It prohibits this court from "weigh[ing] the evidence or substitut[ing] its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Therefore, even if this Court would have decided the matter differently, it is bound by the ALJ's findings of fact so long as they are supported by substantial evidence. Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012) (quoting Fargnoli v. Massanari, 247 F.3d 34, 35 (3d Cir. 2001)).

In determining whether there is substantial evidence to support the Commissioner's decision, the Court must consider: "(1) the objective medical facts; (2) the diagnoses of expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the Plaintiff and corroborated by family and neighbors; and (4) the Plaintiff's educational background, work history, and present age." Holley v. Colvin, 975 F. Supp. 2d 467, 475 (D.N.J. 2013), aff'd 590 F. Appx. 167 (3d Cir. 2014).

The ALJ must explain their reasoning such that the final determination is amenable to meaningful review. Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119 (3d Cir. 2000). The Third Circuit has held, however, that an ALJ need not use particular language or adhere to a particular format when conducting their analysis, as long as there is "sufficient development of the record and explanation of findings to permit meaningful review." Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004).

## B. The Five-Step Disability Test

Under the Social Security Act ("the Act"), disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1). To determine whether a claimant is disabled under the Act, the Commissioner applies a five-step test. 20 C.F.R. § 416.920.

First, the Commissioner must determine whether the claimant is currently engaging in "substantial gainful activity." Id. "Substantial gainful activity" is work activity involving physical or mental activities that are "usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 416.972. If the claimant is engaged in substantial gainful activity, then they are not disabled and the inquiry ends. Jones, 364 F.3d at 503. Alternatively, if the Commissioner determines that the claimant is not engaged in substantial gainful activity, then the analysis proceeds to the second step: whether the claimed impairment or combination of impairments is "severe." 20 C.F.R. § 416.905(a). The regulations provide that a severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). If the claimed impairment or combination of impairments is not severe, the inquiry ends, and benefits must be denied. See id.

At the third step, the Commissioner must determine whether there is sufficient evidence to demonstrate that the claimant suffers from a cross-referenced impairment. 20 C.F.R. § 416.920(d). If so, a disability is conclusively established, and the claimant is entitled to benefits. Jones, 364 F.3d at 503. If not, the Commissioner, at step four, must decide if the claimant has

the "residual functional capacity" ("RFC") to perform his past relevant work. 20 C.F.R. §416.920(e). If so, then the claim for benefits must be denied. 20 C.F.R. § 416.960(b)(3).

At the fifth step, if the claimant is unable to engage in past relevant work, the Commissioner must ask whether "work exists in significant numbers in the national economy that [the claimant] can do given [her] residual functional capacity and vocational factors." 20 C.F.R. § 416.960(c). The claimant bears the burden of establishing steps one through four. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). The burden of proof shifts to the Commissioner at step five. Id.

## II. BACKGROUND

### A. Procedural History

Plaintiff filed an application for DIB and SSI in April of 2016, asserting she became disabled at age 42 in October 2015 due to, among other things, orthopedic conditions, lupus, fibromyalgia, rheumatoid arthritis, obesity, and mental conditions. Tr. 14, 456–67. Her claims were denied in September of 2016 and again in February of 2017. Id. 223–34, 238–43. Thereafter, Plaintiff had her first hearing before ALJ George C. Yatron, who denied her claims in January of 2019. Plaintiff then requested the Appeals Council review the ALJ's decision; the request was denied. Id. 208–14, 317–18, 721–26. After Plaintiff commenced an action against the Commissioner in the Eastern District of Pennsylvania, the Commissioner filed an uncontested motion to remand the ALJ's decision. Id. 215. Upon remand, in an order dated January 11, 2021, the Appeals Counsel set forth various directives for the ALJ overseeing the new hearing. Id. 218–20. ALJ McAneney held the new hearing by telephone on February 17, 2022. Id. 11. On March 30, 2022, the ALJ denied Plaintiff's claims for benefits. Id. 36. The instant action followed.

### B. The ALJ's Decision

ALJ McAneney found the Plaintiff was not disabled at step five of the five-step disability analysis. At step one, the ALJ concluded that Plaintiff had "engaged in substantial gainful activity for at least a six month period in 2019, otherwise, she did not engage in substantial gainful activity." Id. 14. At step two, the ALJ determined that Plaintiff suffers from the following severe impairments: "lumbar degenerative disc disease (DDD), lupus, fibromyalgia, rheumatoid arthritis, thrombocytopenia, iron deficiency anemia, obesity, bipolar disorder, anxiety disorder, depression, and as of 2019, mild bilateral trochanteric bursitis." Id. 14. At step three, the ALJ found that none of Plaintiff's impairments, individually or collectively, met or medically equaled the criteria of a listed impairment. Id. 15.

Before moving on to step four, the ALJ found Plaintiff's residual functional capacity ("RFC") to be as follows:

> claimant has the residual functional capacity to perform sedentary work . . . except: frequent handling and fingering; occasional postural maneuvers except no climbing ladder, ropes, scaffolds; occasional exposure to temperature extremes, humidity, and respiratory irritants; option to alternate between sitting and standing at the individual's discretion; use of cane for ambulation; and limited to simple and routine tasks, confined to occasional interaction with the public, coworkers, and supervisors, and no more than occasional changes in work processes or tasks.

Id. 19. At step four, the ALJ found that Plaintiff is unable to perform relevant past work. Id. 33. At step five, relying on testimony from a vocational expert, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as final assembler of optical goods, dowel inspector, and carding machine operator. Id. 34–35. The ALJ thus concluded that Plaintiff was not disabled within the meaning of the Act. Id. 35.

### III. ANALYSIS

Plaintiff challenges ALJ McAneney's decision based on 1) the ALJ's failure to reconcile Plaintiff's RFC with the vocational expert's testimony and 2) the lack of weight the ALJ gave to the opinions of Plaintiff's treating physicians. The Court will address each issue in turn.

#### A. Plaintiff's RFC and the Vocational Testimony

Plaintiff contends that even though the ALJ's RFC determination expressly limited Plaintiff's ability to do "frequent handling and fingering," the jobs the vocational expert opined Plaintiff can perform either involve handling or fingering or are otherwise obsolete positions not available in the national economy. Id. 19. Plaintiff further takes issue with the fact that the hypothetical presented to the vocation expert did not accurately reflect Plaintiff's limitations even though, on remand, the Appeals Council directed the ALJ to ensure the hypothetical reflected the specific capacity limitations established in the entire record. Id. 220.

The ALJ's RFC states that Plaintiff is limited to frequent—as opposed to constant—handling and fingering. Id. 19. Plaintiff claims, "it is impossible for her to use her fingers for fine motor tasks; she cannot even hold a cup and is unable to use a screwdriver or scissors." Id. 21. Dr. Ruth Robles, a consultive examiner, who saw Plaintiff in January of 2017, found that Plaintiff had no significant fine motor limitations. Id. 31–32. The ALJ found this "generally persuasive" because the examination report shows that Plaintiff "had no edema or joint abnormalities and did not, at that time, have positive tender points. Further, she had full muscle strength and no significant atrophy and had intact sensation and fine and gross motor movements." Id. In light of this evidence, the ALJ found that Plaintiff is "limited to frequent handling and fingering bilaterally." Id. 31; see id. 31 ("[T]he record as a whole including the claimant's own testimony regarding her functioning, supports a reduction to sedentary work with an ability to use a cane and an ability to change positions at will with frequent handling and

reaching").

According to the vocational expert, final assembler of optical goods "requires frequent reaching, handling, and fingering," dowel inspector "requires frequent reaching and handling as well as occasional fingering and no feeling," and carding machine operator "requires frequent reaching and handling, occasional fingering, and no feeling." Id. 34–35. In a footnote, the ALJ does not contest that the job of carding machine operate is "obsolete." Id. 35 n.2. When questioned, the vocational expert testified that the job of final assembler of optical goods requires the capacity to frequently reach, handle, and finger and therefore could not be performed by an individual who cannot engage in fingering because of rheumatoid arthritis. Id. 2002–03.

The ALJ relied on substantial evidence to find that Plaintiff can perform jobs requiring frequent handling and fingering. She considered Plaintiff's testimony as well as that of a consultive examiner and that doctor's examination report. The RFC does not limit Plaintiff from performing jobs requiring frequent handling and fingering, but to jobs that require something more than frequent, such as constant, fingering and handling. In that regard, the hypothetical presented to the vocational expert reflects the ALJ's RFC, which is supported by substantial evidence. The Court therefore disagrees with Plaintiff and will not remand the ALJ's decision on this basis.

### B. The Opinions of Plaintiff's Treating Physicians

Plaintiff also argues that the ALJ erred in failing to give proper weight to the opinions of Plaintiff's treating physicians. On this point, the Court agrees.

On remand, the Appeals Counsel directed the ALJ to give further consideration to the treating and non-treating source opinions and explain the weight given to such evidence. Id. 220. Under 20 C.F.R. § 404.1527(c)(2), "more weight" is given to the opinions of treating physicians

because "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations."  Indeed, where a treating physician's opinion is well-supported and not inconsistent with other substantial evidence in the record, it is given "controlling weight."  20 C.F.R. § 404.1527(c)(2); see also Masher v. Astrue, 354 Fed. Appx. 623, 628 (3rd Cir. 2009) (quoting Fargnoli v. Massanari, 247 F.3d 34, 43 (3rd Cir. 2001).

The ALJ assigned little to no weight to the opinions of several of Plaintiff's treating physicians.  In June 2016, Dr. Mark A. Cohen performed "an open lumbar laminectomy, facetectomy, and discectomy with decompression and fusion at L4-L5" on Plaintiff.  Tr. 22.  Two months following the procedure, Dr. Cohen stated that "at this time" he did not believe Plaintiff "will be able to return back to gainful employment."  Id.  The ALJ assigned no weight to this opinion as it was not qualified by a durational boundary.  Id. 29.  Dr. Cohen saw Plaintiff several times thereafter.  Upon exam, in November 2016, Dr. Cohen found that Plaintiff had decreased range of motion secondary to paravertebral spasm of her lumbar spine.  Id. 1236.  He referred her to physical therapy.  Id.  In December 2016, Dr. Cohen found that Plaintiff was permanently disabled and could not sit or stand for more than ten minutes.  Id. 1543.  Over a year after the surgery, in August 2017, Dr. Cohen again found Plaintiff disabled: "[Plaintiff] had [a] spinal fusion on 6/16/16. She is unable to return to gainful employment and is permanently disabled."  Id. 30, 1544.  Dr. Cohen saw Plaintiff again in February 2018, and, upon examination, found she had decreased range of motion in the lumbar spine, paravertebral spasm, and decreased sensation in the L5 nerve root.  Id. 1459.  Dr. Cohen, who was Plaintiff's primary surgeon, was asked in 2016 by the Division of Disability Services to assess her functional

capacity, to which he stated "no work" due to spinal fusion surgery. Id. 936. The ALJ assigned "little weight" to Dr. Cohen's opinions, stating they were conclusory and unsupported by objective medical evidence. Id. 30.

Similarly, Plaintiff, in April 2018, after slipping and falling in a laundromat, saw Dr. James C. Volpe, who treater her through at least April 2019. Id. 23–25. After several visits, commencement of physical therapy, and prescription of a back brace, Dr. Volpe concluded that Plaintiff "is not able to return to their pre-injury job without restrictions." Id. 25, 1679. Upon examination, along with muscle spasms and tenderness, Dr. Volpe found that Plaintiff's range of motion in her lumbar spine was significantly diminished. Id. 1678. The ALJ assigned "little weight" to Dr. Volpe's opinion that Plaintiff could not return to her pre-injury job without restrictions, arguing his statements were vague. Id. at 25.

Another treating physician of Plaintiff, Dr. Jose Marmol, in February 2015, opined, in a handwritten letter, that because of Plaintiff's "extreme medical conditions" including, bipolar disorder, multiple joint pains, arthritis, and lupus, she is unable to work. Id. 778. Notably, this analysis occurred several months prior to the alleged onset of Plaintiff's disability. Dr. Marmol made similar findings in a July 2016 medical report. Id. 970–73. The ALJ assigned "no weight" to Dr. Marmol's statements because they were conclusive and vague. Id. 29. Dr. Marmol did not provide records from his examination and treatment of Plaintiff.

Plaintiff also sought treatment from Dr. Michael J. Nimeh. In January 2019, he wrote a letter on behalf of Plaintiff stating, "I have reviewed her records and have determined that she is permanently disabled and unable to be gainfully employed due to a chronic condition related to failed spinal fusion surgery performed on 6/16/16." Id. 1676. In April 2019, Dr. Nimeh recommended bariatric surgery for Plaintiff who was unsuccessful in her weight loss. Id. 1727.

She had the surgery the following July. Id. 1729–53. The ALJ gave "no weight" to Dr. Nimeh's finding that Plaintiff is disabled because his letter was written for Plaintiff's excusal from community service and because it was conclusory and vague. Id. 30.

The ALJ gave little to no weight to the opinions of these four treating physicians. While the opinion of Dr. Marmol predates Plaintiff's disability and is unsupported by treatment records, the opinions—especially of Drs. Cohen and Volpe—both treating physicians who saw Plaintiff for several years, should have been accorded more than "little weight." On the current record, the Court does not understand how the ALJ reached the conclusion that the doctors' opinions were vague and conclusory and in what way the opinions of Drs. Cohen, Volpe, and Nimeh are unsupported by medically accepted diagnostics and inconsistent with substantial evidence in the record.

The Court will therefore vacate the ALJ's decision and remand for further proceedings.

### IV.  CONCLUSION

For the foregoing reasons, the determination of the Commissioner is **VACATED** and this matter is **REMANDED** for further proceedings. On remand, the ALJ should provide a more detailed explanation as to how the opinions of the treating physicians were weighted in light of the treating physician regulation. See 20 C.F.R. § 404.1527(c)(2). An appropriate order follows.

Date: January 6, 2025

s/ Madeline Cox Arleo
**Hon. Madeline Cox Arleo**
**UNITED STATES DISTRICT JUDGE**

10